DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Frank Bellino, the surviving spouse of Mary Ann Bellino, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to amend its award of permanent total disability compensation to begin July 11, 1999, rather than November 11, 2001.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be granted to order the commission to issue a new order and to give consideration to the August 7, 2002 report of Dr. Anil C. Nalluri in determining the beginning date for permanent total disability compensation.
 {¶ 3} The commission has filed objections to the magistrate's decision.
 {¶ 4} In its objections, the commission argues that it did not err in failing to consider the August 7, 2002 report of Dr. Nalluri, because it was untimely filed. However, as relator correctly notes in response to the commission's objections, once Mary Ann Bellino died, the application for benefits abated and was no longer pending pursuant to R.C. 4123.58, and Ohio Adm. Code4121-3-34(C)(4)(b) was no longer applicable. Rather, relator's application for death benefits had to be considered pursuant to R.C. 4123.60 and Ohio Adm. Code 4123-3-07.
 {¶ 5} Therefore, upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. The commission's objections to the magistrate's decision are overruled, and a writ of mandamus is granted to order respondent, Industrial Commission of Ohio, to vacate its October 2002 order that commenced permanent total disability compensation on November 11, 2001, and to issue an order granting such compensation with a starting date to be determined after considering the August 7, 2002 report of Dr. Nalluri.
Objections overruled, writ of mandamus granted.
Bryant and Watson, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Mary Ann Bellino : (deceased) Frank Bellino (surviving spouse), : :
Relator, : :
v. : No. 03AP-108 : (REGULAR CALENDAR) Industrial Commission of Ohio : and Ser Enterprises LTD, : Respondents. :
 MAGISTRATE'S DECISION Rendered on November 19, 2003 IN MANDAMUS {¶ 6} In this original action, relator, Frank Bellino, the surviving spouse of Mary Ann Bellino ("decedent" or "Mrs. Bellino"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to amend its award of permanent total disability ("PTD") compensation so that compensation begins July 11, 1999, based upon the August 7, 2002 report of decedent's treating psychiatrist Anil C. Nalluri, M.D.
 Findings of Fact {¶ 7} 1. On March 8, 1992, Mary Ann Bellino sustained an industrial injury which is allowed for: "sprain lumbar spine; depressive psychosis, unspecified," and is assigned claim number 92-54149.
 {¶ 8} 2. On December 12, 2001, Mrs. Bellino filed an application for PTD compensation. In support of her application, Mrs. Bellino submitted a report, dated November 11, 2001, from her treating psychiatrist, Dr. Nalluri. In his November 11, 2001 report, Dr. Nalluri concluded: "Based on her psychiatric as well as her physical impairments, she is not able to perform any sustained, gainful, remunerative employment of any sort."
 {¶ 9} 3. On December 17, 2001, the commission issued to the parties the "acknowledgement" letter required by Ohio Adm. Code4121-3-34(C)(2). The letter or notice informed the parties that the PTD application had been filed on December 12, 2001, and that the employer had until February 15, 2002 (60 days from the date of the acknowledgement letter) to submit additional medical evidence. The acknowledgement letter informed the parties that they could request a 30 day extension for filing additional medical evidence and that an extension would be granted by the hearing administrator for good cause shown.
 {¶ 10} The acknowledgement letter also informed the parties that the hearing administrator may decide to schedule a prehearing conference within approximately 120 days from the date of the filing of the application and that the parties could request a prehearing conference. The letter stated that "[n]o new and/or additional evidence will be accepted after this conference except in extraordinary circumstances."
 {¶ 11} 4. There is no evidence of record showing that Mrs. Bellino requested a 30 day extension for the filing of additional medical evidence or that she ever requested a prehearing conference with a hearing administrator.
 {¶ 12} 5. Mrs. Bellino died on March 18, 2002.
 {¶ 13} 6. On May 6, 2002, relator, Frank Bellino, the surviving spouse of Mary Ann Bellino, filed a C-6 application for payment of compensation accrued at the time of death. The application was filed pursuant to R.C. 4123.60.
 {¶ 14} 7. On July 17, 2002, at the commission's request, psychologist Steven B. Van Auken conducted a file review of the medical evidence of record pertaining to decedent. In his July 17, 2002 report, Dr. Van Auken found that decedent's allowed psychiatric condition had reached maximum medical improvement by the time of her death and that it caused a 30 percent impairment of the whole person.
 {¶ 15} 8. On July 30, 2002, Dr. Van Auken completed an occupational activity assessment form which asks the examining psychologist the following two-part query:
Based on the impairment resulting from the allowed/alleged psychiatric/psychological condition(s) only, can this claimant meet the basic mental/behavioral demands required:
To return to any former position of employment?
To perform any sustained remunerative employment?
Dr. Van Auken responded in the negative to both queries.
 {¶ 16} 9. In a report dated August 7, 2002, Dr. Nalluri wrote:
The above-named patient was under my professional care from 07/11/99 up until her death on 03/18/02. She was being treated for the allowed condition of Major Depressive Disorder, Single Episode-Unspecified (296.20). I have re-viewed my initial psychiatric examination and my updated psychiatric examination as well as her entire progress notes. I also had the opportunity to review the Psychological Assessment of Steven B. Van Auken, Ph.D.
The patient was totally and permanently impaired from the date of her initial treatment, which was 07/11/99. * * *
 {¶ 17} 10. Relator filed Dr. Nalluri's August 7, 2002 report with the Ohio Bureau of Workers' Compensation ("bureau") on August 19, 2002.
 {¶ 18} 11. Following an October 4, 2002 hearing, a staff hearing officer ("SHO") issued an order granting relator's C-6 application. The SHO's order states:
* * * [T]he widower-claimant's C-6 application for payment of compensation accrued at the time of death filed 5-6-02 is granted to the extent of this order.
The Staff Hearing Officer finds that the decedent, Mary Ann Bellino, died on 3-18-02 and at that time, was permanently and totally disabled based on the medical report of Dr. Nalluri dated 11-11-01 and Dr. Van Auken's report dated 7-17-02 and his 7-30-02 Occupational Activity Assessment Report.
* * *
Thus, the Staff Hearing Officer finds that prior to death, the decedent was entitled to Permanent Total Disability Compensation from 11-11-01 through 3-18-002 [sic], inclusive. Said award is now granted to Frank T. Bellino, surviving spouse.
Accordingly, pursuant to Ohio Revised Code Section 4123.60, the Staff Hearing Officer finds that the decedent's spouse, Frank T. Bellino, was wholly dependent on the decedent and is entitled to the following compensation.
Permanent Total Disability Compensation shall be paid to the surviving spouse, Frank T. Bellino, for the closed period from 11-11-01 through 3-18-02, inclusive, less any compensation previously paid over this period.
The Staff Hearing Officer finds that the permanent total disability benefits are to begin 11-11-01, the date of Dr. Nalluri's 11-11-01 report, which is the first reliable medical report indicating that the decedent was permanently and totally disabled.
* * *
This decision is based upon the report of Dr. Nalluri dated 11-11-01 and Dr. Van Auken's reports dated 7-17-02 and 7-30-02.
All evidence contained in the record has been reviewed and considered.
 {¶ 19} 12. On November 21, 2002, relator filed a request for reconsideration of the SHO's order of October 4, 2002. In his request for reconsideration, relator argued that the SHO's order presents a "mistake of fact and/or law" because the commission failed to start PTD on July 11, 1999, based upon Dr. Nalluri's August 7, 2002 report.
 {¶ 20} 13. On January 16, 2003, the commission mailed an order denying relator's request for reconsideration. The January 16, 2003 order states that the request for reconsideration "is denied for the reason that the request fails to meet the criteria of Industrial Commission Resolution No. R98-1-3 Dated May 6, 1998."
 {¶ 21} 14. On February 11, 2003, relator, Frank Bellino, filed this mandamus action.
 Conclusions of Law {¶ 22} Two issues are presented: (1) whether Ohio Adm. Code4121-3-34(C)'s rules for the timely submission of medical evidence supporting a PTD application can be applied here to show that the commission was not required to consider Dr. Nalluri's August 7, 2002 report; and (2) assuming that the commission was required to consider Dr. Nalluri's August 7, 2002 report and that it is ordinarily not required to list or mention reports not relied upon, has the presumption of regularity attaching to commission proceedings, nevertheless, been rebutted by the record before this court.
 {¶ 23} The magistrate finds: (1) Ohio Adm. Code 4121-3-34(C) cannot be applied here to show that the commission was not required to consider Dr. Nalluri's August 7, 2002 report; and (2) the presumption of regularity attaching to commission proceedings has been rebutted by evidence indicating that the commission failed to consider Dr. Nalluri's report when it granted relator's C-6 application.
 {¶ 24} Accordingly, as more fully explained below, it is the magistrate's decision that this court issue a writ of mandamus.
 {¶ 25} Ohio Adm. Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications. Ohio Adm. Code4121-3-34(C) is captioned "Processing of applications for permanent total disability."
 {¶ 26} Ohio Adm. Code 4121-3-34(C)(2) provides for the so-called acknowledge-ment letter, stating:
At the time the application for permanent total disability compensation is filed with the industrial commission, the industrial commission shall serve a copy of the application together with copies of supporting documents to the employer's representative (if the employer is represented), or to the employer (if the employer is not represented) along with a letter acknowledging the receipt of the permanent total disability application.
 {¶ 27} Ohio Adm. Code 4121-3-34(C)(4)(a), a provision cited by respondent, states:
The claimant shall ensure that copies of medical records, information, and reports that the claimant intends to introduce and rely on that are relevant to the adjudication of the application for permanent total disability compensation from physicians who treated or consulted the claimant within five years from date of filing of the application for permanent total disability compensation, that may or may not have been previously filed in the workers' compensation claim files, are contained within the file at the time of filing an application for permanent total disability.
 {¶ 28} Ohio Adm. Code 4121-3-34(C)(4)(b) states:
The employer shall be provided sixty days after the date of the industrial commission acknowledgement letter provided for in paragraph (C)(2) of this rule to submit medical evidence relating to the issue of permanent total disability compensa-tion to the commission.
 {¶ 29} Ohio Adm. Code 4121-3-34(C)(4)(d), the other provision cited by respondent, states:
Upon request of either the claimant or the employer and upon good cause shown, the hearing administrator may provide an extension of time, not to exceed thirty days, to obtain the records described in paragraphs (B)(4)(a) and (B)(4)(b) of this rule. Thereafter, no further medical evidence will be admis-sible without prior approval by a hearing administrator.
 {¶ 30} Ohio Adm. Code 4121-3-34(C)(5)(a)(iii) provides that, during the 60 days following the filing of the PTD application, the claims examiner shall "[s]chedule appropriate medical examination(s) by physician(s) to be selected by the industrial commission."
 {¶ 31} Ohio Adm. Code 4121-3-34(C)(6)(c) provides for the referring of claim file documents to a vocational expert to be selected by the commission. At the time of the referral to a vocational expert, the hearing administrator shall notify the parties that they have 45 days within which to submit additional vocational information and to request a prehearing conference.
 {¶ 32} Ohio Adm. Code 4121-3-34(C)(7) provides:
If the employer or the claimant request, for good cause shown, that a pre-hearing conference be scheduled, the request shall be decided by the hearing administrator. * * *
 {¶ 33} Ohio Adm. Code 4121-3-34(C)(9) provides in part:
* * * After the pre-hearing conference, unless authorized by the hearing administrator, no additional evidence on the issue of permanent and total disability shall be submitted to the claim file. If the parties attempt to submit additional evidence on the issue of permanent and total disability, the evidence will not be admissible on the adjudication of permanent total disability compensation.
 {¶ 34} Apparently, during the 60 days following the December 12, 2001 filing of the PTD application at issue here, the commission never scheduled the appropriate medical examinations under Ohio Adm. Code 4121-3-34(C)(5)(a)(iii). Of course, medical examinations were precluded by the death of Mrs. Bellino on March 18, 2002. Decedent died some three months after the filing of her PTD application.
 {¶ 35} Likewise, the referral to a vocational expert pursuant to Ohio Adm. Code 4121-3-34(C)(6)(c) never occurred.
 {¶ 36} Here, following the death of the PTD applicant and the filing by relator of the C-6 application, the commission requested that Dr. Van Auken perform a file review. Dr. Van Auken performed the file review on July 17, 2002, as previously noted.
 {¶ 37} The magistrate observes that Ohio Adm. Code4121-3-34(C) does not, by its terms, contemplate the death of the PTD applicant during the processing of the PTD application, nor does it specifically provide for a physician file review following the filing of a C-6 application by the surviving spouse.
 {¶ 38} In short, in the magistrate's view, the commission cannot rely upon the provisions of Ohio Adm. Code4121-3-34(C)(4)(a) and (d) to suggest that the commission was not required to consider Dr. Nalluri's August 7, 2002 report simply because the report was not submitted with a PTD application nor did it receive prior approval of a hearing administrator.
 {¶ 39} Dr. Nalluri's August 7, 2002 report was filed with the bureau on August 19, 2002, in response to Dr. Van Auken's file review of July 17, 2002. Dr. Nalluri's August 7, 2002 report was filed one and one-months prior to the October 4, 2002 hearing.
 {¶ 40} Other than suggesting that it was not required to consider Dr. Nalluri's August 7, 2002 report because of Ohio Adm. Code 4121-3-34(C), the commission here has provided no reason for concluding that the report can be excluded from evidentiary consideration. Moreover, the SHO's order of October 4, 2002, provides no explanation as to how the report can be excluded from evidentiary consideration.
 {¶ 41} Based upon the foregoing analysis, the magistrate concludes that the commission was required to consider Dr. Nalluri's August 7, 2002 report in determining relator's C-6 application.
 {¶ 42} Turning to the second issue, the commission abuses its discretion when it undertakes to list all the evidence it considered in an order adjudicating PTD but omits to list relevant evidence. State ex rel. Fultz v. Indus. Comm. (1994),69 Ohio St.3d 327. In State ex rel. Lovell v. Indus. Comm.
(1996), 74 Ohio St.3d 250, 252, the court clarified Fultz
stating:
State ex rel. Mitchell v. Robbins Myers, Inc. (1983),6 Ohio St.3d 481, * * * directed the commission to cite in its orders the evidence on which it relied to reach its decision. Reiterating the concept of reliance, State ex rel. DeMint v.Indus. Comm. (1990), 49 Ohio St.3d 19, 20, * * * held:
"Mitchell mandates citation of only that evidence relied
on. It does not require enumeration of all evidenceconsidered." (Emphasis original).
Therefore, because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings (State ex rel. Brady v. Indus. Comm.
[1989], 28 Ohio St.3d 241 * * *) gives rise to a second presumption — that the commission indeed considered all the evidence before it. That presumption, however, is not irrebuttable, as Fultz demonstrates.
(Emphasis sic.)
 {¶ 43} In her order of October 4, 2002, the SHO stated her reliance upon Dr. Nalluri's report of November 11, 2001, and Dr. Van Auken's reports. The PTD compensation was started November 11, 2001, based upon Dr. Nalluri's report of that date. In that regard, the SHO's order states:
The Staff Hearing Officer finds that the permanent total disability benefits are to begin 11-11-01, the date of Dr. Nalluri's 11-11-01 report, which is the first reliable medical report indicating that the decedent was permanently and totally disabled.
 {¶ 44} The above-quoted portion of the SHO's order strongly suggests that the SHO was unaware of Dr. Nalluri's August 7, 2002 report. Nevertheless, respondent seems to suggest that the order finds Dr. Nalluri's August 7, 2002 report to be unreliable. The commission argues that the report is unreliable by rhetorically asking: "If Dr. Nalluri believed that the decedent was actually PTD during his initial assessment on July 11, 1999, why didn't he state this opinion in his [Nov. 11, 2001] report." (Commission's brief at 4.)
 {¶ 45} The rhetorical question is not one for this court to answer in this action nor is it a question that the SHO answered in her order. The SHO apparently never weighed the credibility of Dr. Nalluri's August 7, 2002 report.
 {¶ 46} Here, the SHO's order itself provides the evidence strongly suggesting that the SHO was unaware of Dr. Nalluri's August 7, 2002 report and thus failed to consider the report in determining when PTD compensation should begin. The presumption of regularity is rebutted by the commission's own order.
 {¶ 47} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to give consideration to the August 7, 2002 report of Dr. Nalluri in determining when PTD compensation shall begin and to amend its SHO's order of October 4, 2002, in a manner that indicates that Dr. Nalluri's August 7, 2002 report was considered.
 /s/ Kenneth W. Macke